**Mary Ann WAYNICK et al., Plaintiffs-Appellants,**

v.

**CHICAGO'S LAST DEPARTMENT STORE, an Illinois corporation, et al., Defendants-Appellees.**

No. 12563.

United States Court of Appeals Seventh Circuit.

July 20, 1959.

Rehearing Denied Sept. 1, 1959.

Alan David Katz, Chicago, Ill., Warren G. Childers, Detroit, Mich., Leo S. Karlin and Daniel Karlin, Chicago, Ill., for appellants.

Paul H. Heineke, Gordon R. Close, Richard E. Mueller, Richard J. Kemper, William H. Schrader, Robert L. Brody, and George J. Gore, Chicago, Ill., Lord, Bissell & Brook, Heineke, Conklin & Schrader, Chicago, Ill., of counsel, for appellees.

Before SCHNACKENBERG, KNOCH and CASTLE, Circuit Judges.

SCHNACKENBERG, Circuit Judge.

In a diversity action, filed in the district court at Chicago, Illinois, by citizens and residents of the state of Michigan against citizens and residents of the state of Illinois, plaintiffs Mary Ann Waynick, Wilma Ann Scruggs, and Carl Mack Waynick, Linda Kay Waynick, Nellie Sue Waynick and Alice Faye Waynick, minors, by Mary Ann Waynick, their mother and next friend, sought recovery of damages sustained by them, when an automobile under the control of Bruce Sims, its owner, and driven by Johnie E. Owens, collided on U.S. Highway 112 in the state of Michigan with an automobile driver by William Gerald Scruggs, who was killed in the collision. Plaintiffs' complaint named as defendants Chicago's Last Department Store, an Illinois corporation, Philip Saxner and Rubin Saxner, doing business as Phil's Tavern, and William Turbin, doing business as Matlan Liquors, who were engaged in the business of selling and furnishing intoxicating liquors in the state of Illinois.[1]

---

[1] The complaint also named as defendants, Harold Harris, lessor of said Philip Saxner and Rubin Saxner, doing business as Phil's Tavern, and Marie Movilli, lessor of said William Turbin, doing business as Matlan Liquors. Said lessors have not appeared in this court on appeal.

It appears from the complaint that Chicago's Last Department Store's premises are situated in Chicago, Illinois, near the Indiana-Illinois state boundary, where said defendant has a large parking lot and caters to drive-in trade and extends an invitation to persons upon the public highway to purchase its wares, and that said defendant permitted said Sims and Owens to consume a large quantity of intoxicating liquor in its parking lot. The complaint further alleges that from 4 P.M. on July 28, 1956 to after midnight of said day, defendants Chicago's Last Department Store, the Saxners and Turbin sold and furnished intoxicating liquor to Sims and Owens, when they were intoxicated, and thus did contribute to their said intoxication, the liquor being furnished in large quantities both by the glass and by carry-out bottles, which intoxication resulted in and was the proximate cause of severe personal injuries and loss of means of support to plaintiffs.

The Saxners moved to dismiss the cause, for failure of the complaint to state a claim, while Chicago's Last Department Store and Turbin moved for judgment on the pleadings, on several grounds, including the following:

"4. Insofar as the plaintiffs' grievances are predicated upon this defendant's violation of a common law duty, if any, owing by it to plaintiffs as is implicitly asserted in paragraphs 12 and 19, the complaint fails to state a cause of action against this defendant because:

"a. At common law it is not actionable to sell alcoholic liquor to an adult; the common law gives no remedy for injury following the sale of intoxicating beverages to an ordinary man.

"b. Having created a right of action by enacting the Dram Shop Act, the General Assembly of Illinois has preempted the field."

**2.** 13 Mich.Stat.Ann. (1957) §§ 18.993 and 18.1000, Comp.Laws 1948, § 43629; Comp. Laws Supp.1956, § 436.22.

From the court's order sustaining defendants' motions, plaintiffs have appealed. They rely for relief, in the alternative, on (1) §§ 22 and 29 of the Michigan Liquor Control Act,[2] (2) § 14 of the Illinois Dram Shop Act,[3] or (3) the common law.

■■ It is our view that plaintiffs' reliance on either the Michigan act or the Illinois act rests upon such dubious grounds that we are impelled to reject those acts as a basis for our decision in this case. That leaves for us to decide whether the common law supports plaintiffs' cause of action. Before considering that question, we feel it proper to point out that the Illinois Dram Shop Act has been held not to apply extraterritorially to a situation where the sale of intoxicating liquor takes place in Illinois and the injury resulting therefrom occurs in another state. Eldridge v. Don Beachcomber, Inc., 342 Ill.App. 151, 154, 95 N.E.2d 512, 22 A.L.R.2d 1123, leave to appeal denied, 346 Ill.App. xiv. It appears to us that it is also probable that the Michigan Liquor Control Act is not applicable where a sale of intoxicating liquor in Illinois produces injuries in Michigan. Defendants so argue in this court and cite a Michigan court decision to support their contention. It would seem to follow that the practical consequence of denying extraterritorial effect to such acts is to leave a vacuum in the law insofar as unlawful sales of intoxicating liquor in one state produce injuries to third persons in another state. Certainly the position of defendants in this court is that the liquor control acts of Illinois and Michigan do not cover such a case. It seems to us, therefore, that their contention that the Illinois Dram Shop Act has "preempted the field", is unsound. Rather it would appear that the Act has avoided the field, rather than preempted it. If the common law does not cover the situation before us, there is actually no law applicable. As Aristotle said, nature abhors a vacuum;

**3.** § 135, ch. 43, R.S.Ill.1957.

so does the law. Lest we too hastily reject the claim of these plaintiffs for pecuniary redress for death and injuries sustained in what was evidently an appalling automobile accident, we turn to the common law, which is in effect in the state of Michigan where the injuries occurred. The law of that state governs the tort liability asserted by plaintiffs herein. As was said in 133 A.L.R. 263:

> " * * * where the question relates to the choice between the law of the place where the negligent act or omission took place and the law of the place where the injury or death or both were inflicted, by the almost unanimous consensus of decision the place of the tort, within the contemplation of the rule that the law of the situs of the tort governs the liability and substantive matters, is the place where the injury or death was inflicted and not the place where the negligent act or omission took place."

In Stout v. Keyes, 2 Doug. Mich., 184, 43 Am.Dec. 465, at 467, it was held that the common law applies in Michigan and that

> " * * * a general principle of the common law, that whenever the law gives a right, or prohibits an injury, it also gives a remedy by action; * * *."

The injury having occurred in Michigan as a result of defendants' acts in Illinois, the common law of Michigan as to tort liability controls.

The sale of intoxicating liquors to Owens and Sims was unlawful when made in Illinois, according to the applicable Illinois statute, § 131, ch. 43, R.S.Ill.1957, which provides:

> "No licensee nor any officer, associate, member, representative, agent or employee of such licensee shall sell, give or deliver alcoholic liquor * * * to any intoxicated person * * *."

Said § 131 provides for fine or imprisonment or both, upon conviction.

In 130 A.L.R. 357, it is stated:

> "While it is true that ordinarily a vendor of intoxicating liquors is not, at common law, answerable to a third person for injury or damage sustained by the latter as a result of the intoxication of the purchaser of the liquor, nevertheless it is established that in some circumstances a vendor's sale of liquor may constitute a wilful violation of his duty to one other than the consumer thereof and be the proximate cause of the injury sustained by such third person, so that for such injury the latter may have a right of action at common law against the vendor."

It is apparent in the case at bar that there are circumstances which make the sales of liquor to Sims and Owens wilful violations of § 131. These circumstances were not usual sales to adults or ordinary men. They were sales to intoxicated persons. They were not sales to "a strong and able bodied man", as referred to in Manthei v. Heimerdinger, 332 Ill. App. 335, 352, 75 N.E.2d 132, 140, relied on by defendants.

Every person has a general duty to use due or ordinary care not to injure others, to avoid injury to others by any agency set in operation by him. 65 C.J.S. Negligence § 4, p. 340.

One essential element in a tort is the existence of a duty imposed by statute or otherwise in favor of the party injured and on the party whose conduct produces the injury. 86 C.J.S. Torts § 6, p. 926. The duty, breach of which may constitute negligence, may be a duty to the person injured as an individual, but this is not essential, since it is sufficient that the duty was owed to him as a member of a class or group. 65 C.J.S. Negligence § 4, p. 348.

The Illinois act making unlawful the sale of alcoholic liquor to any intoxicated person is for the protection of any member of the public who might be injured or damaged as a result of the drunkenness to which the particular sale of alcoholic liquor contributes. Obviously the plaintiffs in the case at bar are en-

titled to the protection given by § 131 of the Illinois Act.

It will be noted that, in availing themselves of that protection, plaintiffs are in no way relying upon those parts of the Illinois act imposing civil damage liability (which was unknown to the common law), resulting from lawful sales of intoxicating liquor to a competent person, commonly known as dram shop act cases.

■ The effect of § 131 of the Illinois act is that a sale of alcoholic liquor cannot lawfully be made to an intoxicated person. This is not inconsistent with the right of any competent adult to buy alcoholic liquor and § 131 does not prohibit a sale to the latter.

■ In applying the common law to the situation presented in this case, we must consider the law of tort liability, even though the chain of events, which started when the defendant tavern keepers unlawfully sold intoxicating liquor to two drunken men, crossed state boundary lines [4] and culminated in the tragic collision in Michigan. We hold that, under the facts appearing in the complaint, the tavern keepers are liable in tort for the damages and injuries sustained by plaintiffs, as a proximate result of the unlawful acts of the former. The court erred in its order dismissing the cause as to Chicago's Last Department Store, an Illinois corporation, Philip Saxner and Rubin Saxner, doing business as Phil's Tavern, and William Turbin, doing business as Matlan Liquors, and to that extent the order appealed from is reversed and this cause is remanded to the district court for further proceedings not inconsistent with the views herein expressed. As to the defendants Harold Harris and Marie Movilli, the order of the district court is affirmed.

In part, affirmed and, in part, reversed and remanded with directions

KNOCH, Circuit Judge (dissenting).

I find myself in agreement with my distinguished colleagues that neither the Michigan nor the Illinois Dram Shop Acts apply and that the Michigan common law governs. I am also in agreement that under Illinois law the Illinois Dram Shop Act cannot be said to have any extraterritorial coverage. Eldridge v. Don Beachcomber, Inc., 342 Ill.App. 151, 95 N.E.2d 512, 22 A.L.R.2d 1123.

The majority holds that the common law by virtue of the penal statute (Sec. 131, Ch. 43, 1951 Illinois Revised Statutes, which makes sales of liquor to intoxicated persons unlawful) gives a civil right of action in tort against the sellers. With this conclusion I cannot agree.

It should be noted that this is a penal statute providing for the punishment of those selling to intoxicated persons and thereby is of general good to the public. It confers no specific rights to private individuals.

"It was not a tort at common law to either sell or give intoxicating liquor to 'a strong and able-bodied man,' and it can be said safely, that it is not anywhere laid down in the books that such act was ever held, at common law, to be culpable negligence that would impose legal liability for damages upon the vendor or donor of such liquor." Cruse v. Aden, 1889, 127 Ill. 231, 234, 20 N.E. 73, 74.

I cannot accept the distinction made— that an intoxicated person is not an "able-bodied man"—because that would, in effect, eliminate any reason for the enactment of the Dram Shop Act.

The majority opinion states that "If the common law does not cover the situation before us, there is actually no law applicable * * * nature abhors a vacuum; so does the law."

4. Hunter v. Derby Foods, Inc., 2 Cir., 110 F.2d 970, 972, 133 A.L.R. 255, 258; Alabama Great Southern R. Co. v. Carroll, 97 Ala. 126, 11 So. 803, 18 L.R.A. 433; Cameron v. Vandegriff, 53 Ark. 381, 13 S.W. 1092; El Paso & N. W. Ry. Co. v. McComas, Tex.Civ.App.1903, 72 S.W.

629; Connecticut Valley Lumber Co. v. Maine Central R. R., 78 N.H. 553, 103 A. 263; and Darks v. Scudders-Gale Grocer Co., 146 Mo.App. 246, 130 S.W. 430, affirmed 171 Mo.App. 37, 153 S.W. 1199.

Prior to the enactment of the Dram Shop Act, tavern keepers and owners had no liability. By the same reasoning, one can say that a total and absolute vacuum prevailed as to them. However, the common law has always held accountable those responsible for direct injury to the person or property of another. This is true in the instant case. There is no bar to proceeding against the driver and the owner of the car in question.

It may be socially desirable to hold tavern keepers and owners responsible under the circumstances in this case, but that result, I believe, should be achieved through Congressional act, rather than by judicial interpretation.

The trial court's order dismissing the complaint not only as to the owners but also as to the tavern keepers is correct and should be affirmed.